# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| EVANS OB'SAINT,<br>Petitioner,<br><br>vs.<br><br>WARDEN, TOLEDO CORRECTIONAL INSTITUTION,<br>Respondent. | Civil Action No. 1:08-cv-640<br><br>Beckwith, J.<br>Hogan, M.J.<br><br>**REPORT AND**<br>**RECOMMENDATION** |

Petitioner, a state prisoner, brings this case *pro se* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1) and memorandum in support thereof (Doc. 6), respondent's return of writ and exhibits thereto (Doc. 13), and petitioner's response to the return of writ (Doc. 16), and on petitioner's motion for summary judgment (Doc. 17), respondent's memorandum in opposition (Doc. 18), and petitioner's reply memorandum. (Doc. 19).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of Appeals:[1]

> {¶ 2} Obsaint entered a PNC bank and handed a teller a note that read, "Read silently. If you look at me again, I'll shoot. If you activate an alarm, my time piece will vibrate and I'll shoot you first, trust me. Quickly remove any dye packs and give me all the money. Hand me back that letter, smile, say thank you and walk to the employee's bathroom. Don't turn around. Don't try me or you'll be sorry forever."
>
> {¶ 3} The teller did not see him make any movements to indicate that he was holding or reaching for a weapon, but believed that he had a gun and complied. Obsaint left the bank with money and a GPS tracking device that had been included with the currency. The police located and arrested him a short time later when the GPS

---
[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

device was traced to Obsaint's car. Obsaint made a full confession, but denied actually having a gun. He consented to a search of his apartment. Sheriff's deputies found the clothing he wore during the robbery and the note he had given to the teller. No gun was located.

{¶ 4} Obsaint was indicted for one count of aggravated robbery in violation of R.C. 2911.01(A)(1), with two gun specifications, and one count of robbery in violation of R.C. 2911.02(A)(2). On the day that the case was set for trial, Obsaint executed a written waiver of a jury trial. . . .

\*
\*
\*

{¶ 10} The case proceeded to trial with the bank teller and a deputy testifying. The questioning by counsel for Obsaint centered on the issue whether there was any evidence, other than the note, that Obsaint had a gun. At the conclusion of the state's case, the trial was adjourned until the next day. In the interim, both sides submitted written argument on whether the note standing alone was enough to establish the use of a firearm for purposes of the aggravating element of robbery and the gun specifications.

{¶ 11} When the case resumed, Obsaint moved for an acquittal pursuant to Crim. R. 29, arguing that the note was not enough to establish that he had possessed a handgun. The trial court denied the motion, and the parties rested. In closing argument, Obsaint again argued that the note was insufficient. The trial court again disagreed and found Obsaint guilty on all charges and specifications.

(Doc. 13, Exh. 10 at 2-3).

Petitioner was sentenced to a total of nine years imprisonment. (Doc. 13, Exh. 4). The two gun specifications and the robbery and aggravated robbery counts were merged. Petitioner received six years for aggravated robbery and three years on the gun specification. *Id.*

Petitioner, through counsel, unsuccessfully appealed his conviction to the First District Ohio Court of Appeals and the Supreme Court of Ohio. (Doc. 13, Exhs. 5-13).

Petitioner filed a *pro se* application for delayed reconsideration in the Ohio Court of Appeals which was overruled. (Doc. 13, Exhs. 14, 15). His subsequent appeal to the Ohio Supreme Court

was dismissed as not involving any substantial constitutional question. (Doc. 13, Exhs. 16-18).

Thereafter, petitioner filed a pro se petition for post-conviction relief alleging his indictment was defective. He also filed motions to amend his petition and for summary judgment in the trial court. (Doc. 13, Exhs. 19-21). The trial court denied the petition as without merit and the motions as moot. (Doc. 13, Exh. 22).

## II. FEDERAL HABEAS CORPUS

Petitioner filed the instant petition for a writ of habeas corpus setting forth the following grounds for relief:

> **GROUND ONE:** Petitioner's conviction is sustained through insufficient evidence, contrary to Federal and Ohio State law.
>
> **Supporting Facts:** Petitioner was found guilty of a gun specification for his crime when there was no weapon of any sort was used in the offense. There was no direct nor circumstantial evidence in this case that established petitioner's alleged possession of an operable firearm or weapon during the incident in question.
>
> **GROUND TWO:** Petitioner was denied due process when the appellate court disregarded the testimony of the bank teller that there was no weapon in the possession of the defendant at the time of the incident.
>
> **Supporting Facts:** During trial, Tiffany Van Leuit testified that she never saw the petitioner in the possession of a gun nor did she witness any conduct on the part of the defendant to indicate possession of a gun or weapon. The appellate court failed to address the issue of her testimony, a lay witness.

(Doc. 1).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267

F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> The phrases "contrary to" and "unreasonable application" have independent meanings: A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to adjudicate the constitutional issues, the AEDPA deferential standard of review set forth in section 2254(d) is inapplicable. *See Wiggins v. Smith,* 539 U.S. 510, 534 (2003); *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where as here, the state court did not assess

the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). Under these circumstances, the constitutional claim is reviewed *de novo* and the Court considers "the totality of the evidence-'both that adduced at trial, *and the evidence adduced in the habeas proceeding[s].*'" *Wiggins,* 539 U.S. at 536 (emphasis in the original) (quoting *Williams v. Taylor,* 529 U.S. 362, 397-98 (2000)). *Accord Clinkscale,* 375 F.3d at 436.

## III. GROUND ONE OF THE PETITION IS WITHOUT MERIT

Petitioner's first ground for relief asserts there was insufficient evidence to support the aggravated robbery conviction and gun specifications. Specifically, petitioner contends there was insufficient evidence to support a finding that he possessed an operable firearm at the time of the robbery.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia,* 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the federal court conducts an independent review of the state court record in analyzing petitioner's sufficiency of the evidence claim. *Nash v. Eberlin,* 437 F.3d 519, 525 (6th Cir. 2006). However, the Court "does not reweigh the evidence or redetermine the

credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "*Jackson* makes clear that 'a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 326). In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson*, 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins*, 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788.

In the instant case, petitioner asserts there was insufficient evidence showing he possessed an operable firearm for purposes of the gun specification and the aggravating element of the robbery offense. (Doc. 1, memo. at 2-7; Doc. 6, memo. at 2-7). Petitioner contends the evidence established he did not possess a firearm because no gun was brandished or seen during the robbery. The bank teller testified she did not see a gun, did not see petitioner reach for anything or go through his pockets, and did not hear him say anything verbally about shooting her or having a gun. (Doc. 6, memo. at 8, citing Doc. 13, Exh. 26 at 12-13). In addition, no gun was recovered after a search of petitioner's car and home. (*Id.* at 38-39).

The First District Court of Appeals overruled petitioner's insufficiency of evidence claim as follows:

> {¶ 12} Obsaint argues, as he did before the trial court, that the note he wrote indicating that he had a gun was not enough to support his conviction for aggravated

robbery and was not enough to support the gun specifications. Accordingly, he claims in three assignments of error that (1) his convictions were supported by insufficient evidence; (2) his Crim. R. 29 motion was improperly denied; and (3) his convictions were against the manifest weight of the evidence. We disagree.

{¶ 13} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.[1] The standard of review for the denial of a Crim. R. 29(A) motion to acquit is the same.[2] In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]

> FN1. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
>
> FN2. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
>
> FN3. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 14} The basis for Obsaint's argument is the decision of this court in *State v. Phillips*.[4] In that case, the defendant robbed a bank by placing his hand in a paper bag, informing the teller that he had a pistol, and telling her that he would shoot her. Based on those facts, this court held that "the lay testimony concerning the threatened shootings was, without more, legally insufficient to warrant convictions on the gun specifications."[5]

> FN4. (1990), 69 Ohio App.3d 379, 590 N.E.2d 1281.
>
> FN5. *Id.* at 382-383, 590 N.E.2d 1281.

{¶ 15} Six years later, this court again addressed the issue. In *State v. Green,*[6] the defendant robbed a bank by placing his hand in a large paper envelope and telling the teller that "this is a stickup, and if you press any buttons I'll blow your brains out." Based on those facts, and without reference to the *Phillips* decision, we affirmed the conviction, holding that there was enough evidence for a jury to conclude that the defendant had a gun.[7]

> FN6. (1996), 117 Ohio App.3d 644, 691 N.E.2d 316.
>
> FN7. *Id.* at 652, 691 N.E.2d 316.

{¶ 16} In 2001, this court again returned to the issue in *State v. Jeffers*.[8] In that case, the defendant robbed a United Dairy Farmers convenience store by keeping his hand in his pocket and telling the clerk that he would "blow [her] head off" if she did not comply. Citing *Green*, we held that there was sufficient evidence to support the gun specifications.[9]

> FN8. *State v. Jeffers* (2001), 143 Ohio App.3d 91, 757 N.E.2d 417.
>
> FN9. *Id.* at 95, 757 N.E.2d 417.

{¶ 17} While these cases each involved a defendant whose claim to possess a gun was accompanied by an overt act, there was nothing in the acts themselves that made them necessary to our decisions. Further, the facts in this case demonstrate why requiring an overt act would be inappropriate. Obsaint's note specifically instructed the bank teller not to look at him. Since the record indicates that she did as the note demanded, she did not have the opportunity to see if Obsaint was doing anything to confirm that he was armed. Under such circumstances, the absence of an overt act goes more to the weight rather than to the sufficiency of the evidence.

{¶ 18} To establish the gun specifications in this case and the aggravating element of robbery, the state had to show that Obsaint had possessed a "firearm."[10] The Revised Code requires that the "firearm" be operable.[11] This court has repeatedly held that the state can make that showing by circumstantial evidence.[12] We reject Obsaint's invitation to require an independent, overt act to support his conviction.

> FN10. See R.C. 2941.141, 2941.145, and 2911.01(A)(1).
>
> FN11. See R.C. 2923.11(B) (defining a "firearm" as "a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant ").
>
> FN12. See *Jeffers* at 95, 757 N.E.2d 417 and cases cited therein.

{¶ 19} We hold that Obsaint's own written admission that he had a gun, in a note that made repeated references to shooting the teller, was sufficient circumstantial evidence to show that he possessed an operable firearm at the time that he committed the robbery. To the extent that our previous decision in *Phillips* was not overruled by *Green* and *Jeffers*, it is overruled today.

{¶ 20} In essence, the trial of this case was about resolving conflicting evidence. In the note that Obsaint gave to the teller, he told her that he had a gun. In his statement to the police, he said he did not. As with any such case, it was left to the trier of fact to resolve this conflict.

{¶ 21} The Second Appellate District has recently reached the same conclusion. In *State v. Greathouse*,[13] the defendant pushed the victim into her car and told her not to look at him. He told her that he had a gun and that he would kill her and dump her body if she did not comply. He then raped her. Concluding that the gun specification was supported by sufficient evidence, the court cited our decision in *Jeffers* and held that "even though S.F. never saw the gun, the circumstantial evidence, including representations made by Greathouse, was sufficient to prove the firearm specification."[14]

FN13. 2nd Dist. No. 21536, 2007-Ohio-2136.

FN14. *Id.* at ¶ 20.

{¶ 22} We recognize the danger of confusion about this issue. Holding as we do today that possession of an operable firearm can be established though circumstantial evidence is not the same as holding that possessing a firearm and claiming to possess a firearm are legally interchangeable. We refuse to accept the position of the state that "[a] defendant may be guilty of a gun specification even if they [sic] do not possess a gun. Simply making the victim believe that they [sic] have a gun through words or actions is enough." The state must still convince a factfinder that the defendant actually possessed a firearm and that it was operable.

{¶ 23} This case is the perfect example of that principle. Obsaint's trial counsel presented a reasonable argument that, since Obsaint had been truthful about every other aspect of the offense when he confessed to the deputies, he was also being truthful when he told them that he did not have a gun at the time. Had the factfinder believed this to be true, the most he could have been convicted of was robbery.

{¶ 24} On this point, we note Obsaint's argument with respect to the robbery charge that, under these facts, the most that he could be "convicted" of was theft. We disagree. Obsaint was found guilty of aggravated robbery and robbery. However, the robbery count was merged into the aggravated robbery count for purposes of sentencing. In *State v. Henderson*,[15] the court defined a conviction as the combined occurrence of a finding of guilty and the imposition of a sentence. In this case, there was more than one finding of guilt, but there was only one conviction involving the imposition of a sentence within the meaning of *Henderson*. Therefore, Obsaint was not convicted of robbery and any error involved in finding him guilty on the second count was harmless as a matter of law.

FN15. (1979), 58 Ohio St.2d 171, 389 N.E.2d 494.

{¶ 25} However, we also reject the argument that he could not have been found guilty of robbery. Obsaint argues that the threat made against the teller was not for

the "immediate use of force." This argument fails for two reasons. First, the record belies the argument. Obsaint's note indicated that he would use immediate, deadly force if she did not comply. Second, Obsaint was found guilty of robbery under R.C. 2911.02(A)(2), which requires only that the defendant "threaten to inflict physical harm on another." Robbery under R.C. 2911.02(A)(3) requires the defendant to "threaten the *immediate* use of force," but Obsaint was not charged with that offense.

{¶ 26} Since the note that Obsaint presented to the bank teller indicated at two separate points that he would shoot her if she did not comply with his demands, the state presented sufficient evidence to establish that he had an operable firearm at the time that he robbed the PNC bank. Therefore, the trial court properly overruled Obsaint's motion for an acquittal pursuant to Crim. R. 29. Furthermore, his convictions were supported by sufficient evidence and were not against the weight of the evidence. Obsaint's first three assignments of error are overruled.

(Doc. 13, Exh. 10 at 3-8).

The issue here is whether petitioner's own written admission that he had a gun, set forth in a note that made repeated references to shooting the bank teller, was sufficient circumstantial evidence to show that he possessed an operable firearm at the time that he committed the robbery. Aggravated robbery requires the defendant "[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Ohio Rev. Code § 2911.01(A)(1). A "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Ohio Rev. Code §§ 2911.01(D)(1); 2923.11(A). The firearm specification requires "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Ohio Rev. Code § 2941.145(A). A "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or

combustible propellant" and "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Ohio Rev. Code § 2923.11(B)(1). The Revised Code provides that circumstantial evidence may be relied upon in determining whether a firearm is operable: "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Ohio Rev. Code § 2923.11(B)(2). Thus, both the gun specification and aggravating element of the robbery offense required the State to prove beyond a reasonable doubt that petitioner possessed an operable firearm.

The Supreme Court of Ohio has held that circumstantial evidence may be used to prove a firearm enhancement specification. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) (syllabus, ¶1). "In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *Id.* The Supreme Court noted that proof that a firearm was operable at the time of the offense "can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." 78 Ohio St.3d at 383, 678 N.E.2d at 544 (quoting *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932 (1990) (syllabus) (finding sufficient evidence of possession and operability where defendant entered store, announced he was robbing it, pointed and waved gun at clerk, and explicitly threatened to kill clerk if clerk did not hand over money). In *Thompkins*, the Ohio Supreme Court held that the trier of fact could reasonably

conclude that the defendant was in possession of an operable firearm where the defendant implicitly threatened to shoot a store clerk by pointing a gun at the clerk and telling her that he was committing a "holdup" and to be "quick, quick," even though the defendant did not expressly threaten to shoot the clerk. 78 Ohio St.3d at 383, 678 N.E.2d at 544. The Court noted that even in the absence of an explicit threat to shoot, the clerk thought her life was in danger. *Id.* The Court concluded that "where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." *Id.* at 384, 678 N.E.2d at 545.

The instant case presents the question of whether an implicit threat to discharge a firearm, in the absence of any evidence the gun was actually viewed at the time of the offense, is sufficient to establish the State's burden of proof that the defendant possessed a firearm that was operable. Numerous Ohio Courts of Appeal have answered this question in the affirmative, finding that threats or statements by the defendant which indicate the gun is operable constitutes circumstantial evidence from which the trier of fact may conclude beyond a reasonable doubt that the defendant possessed an operable firearm. For example, in *State v. Literal*, No. 07CA3207, 2009 WL 119839, at *6-7 (Ohio App. 4th Dist. Jan. 12, 2009), the Ohio Court of Appeals upheld the defendant's aggravated robbery conviction despite the absence of any evidence of a visible gun. In *Literal*, the defendant entered a pharmacy and handed the pharmacist a note indicating this was a robbery and requesting pharmaceuticals. The note further stated that the defendant possessed a gun and instructed the pharmacist not to sound the alarm or contact the police for at least five minutes, as there was another individual in the front of the store who also had a gun and who would remain in the store for five minutes after the robbery. The pharmacist testified that the defendant stood at the

12

counter with his hand near his waist where there appeared to be a bulge under his jacket, leading the pharmacist to believe he had a gun during commission of the robbery. There was also evidence that the pharmacist, in accordance with the defendant's instructions in the note, waited several minutes and surveyed the front of the store before alerting authorities of the robbery. The Court of Appeals determined that a reasonable jury could conclude beyond a reasonable doubt from the totality of the circumstances that the defendant possessed a deadly weapon. *Id.* at *7. *See also State v. Jeffers*, 143 Ohio App.3d 91, 757 N.E.2d 417 (Ohio App. 1st Dist. 2001) (sufficient evidence existed to support firearm specification where robbery defendant kept hand in pocket and told convenience store that he would "blow [her] head off" if she did not comply); *State v. Greathouse*, No. 21536, 2007 WL 1297181, at *4 (Ohio App. 2nd Dist. May 4, 2007) (sufficient evidence supported firearm specification even though victim never saw a gun, where defendant told victim that he had a gun and that he would kill her and dump her body if she did not comply); *State v. Haskins*, No. E-01-016, 2003 WL 99572, at *7 (Ohio App. 6th Dist. Jan. 10, 2003) (sufficient evidence to support aggravated robbery conviction where defendant threatened "Are you going to give me the money or do I have to pull this pistol out of my pocket?" and attendant believed defendant in fact had a gun and responded by immediately by putting up her hands even though no weapon was actually seen or found); *State v. Green*, 117 Ohio App.3d 644, 651-652, 691 N.E.2d 316, 321 (Ohio App. 1st Dist. 1996) (sufficient evidence of deadly weapon where defendant verbally threatened to "blow the heads off" victims while having large envelope wrapped around hand, and victims surrendered money based on belief defendant was armed). *Cf. State v. Leftwich*, No. 23383, 2009 WL 3068259, at *3 (Ohio App. 2nd Dist. Sept. 25, 2009) ("A victim's belief that a defendant had a gun, together with the intent on the part of the defendant to create and use that belief for his own criminal

13

purposes, is sufficient to prove a firearm specification."). As the Ohio Court of Appeals in *Green* reasoned, "one who indicates by word and conduct that he has a gun in his possession should not be entitled as a matter of law to the conclusion that such words and conduct have no meaning." *Green*, 117 Ohio App.3d at 651, 691 N.E.2d at 321.

In the instant case, there was sufficient evidence from which the trier of fact could conclude beyond a reasonable doubt that petitioner possessed an operable firearm. The note handed to the bank teller by petitioner made two specific threats to shoot the teller if she did not comply with petitioner's instructions. Petitioner also threatened the teller that she would "be sorry forever" if she failed to comply with his instructions, confirming the ability of the firearm to produce a fatal result. Even though the bank teller testified that she did not see petitioner with a gun, she testified she believed petitioner had a gun and that if she did not comply with his demands she would be shot. (Doc. 13, Exh. 26, Tr. 8). The teller acted in accordance with this belief by handing over the money and going to the employee restroom as instructed by petitioner in his note.

In contrast to the circumstantial evidence that petitioner possessed a gun that was operable, petitioner told the police he did not have a firearm when he robbed the bank. (Doc. 13, Exh. 26, Tr. 34). While no gun was ever found, this fact is not dispositive because petitioner had time to dispose of a weapon between his commission of the robbery and his arrest. As Detective Pitchford testified, one of the first items to be disposed of by a perpetrator of a crime is a gun. (Doc. 13, Exh. 26, Tr. 39-40). Although petitioner's denial of having a gun conflicted with his written admission that he possessed a gun during the robbery, the Court must presume that the trier of fact resolved the conflicting evidence in favor of the prosecution in weighing the evidence in this case. *O'Hara*, 499 F.3d at 499, 500. The Ohio Court of Appeals reasonably determined that petitioner's written

14

admission to possessing a gun and his threats to shoot the teller was sufficient circumstantial evidence from which the trier of fact could conclude that petitioner possessed an operable firearm.

This Court likewise concludes that there is sufficient evidence from which the trier of fact could conclude beyond a reasonable doubt that petitioner possessed an operable firearm where he admitted, in writing, to possessing a gun at the time of the robbery and that the gun was operable where he repeatedly threatened to shoot the bank teller, and where the victim acted in accordance with her belief that petitioner in fact possessed an operable gun.[2] When viewed in the light most favorable to the prosecution, the evidence was sufficient to establish the essential elements of aggravated robbery and the gun specification beyond a reasonable doubt.

There was sufficient evidence from which any rational trier of fact could find petitioner guilty of aggravated robbery and the gun specification beyond a reasonable doubt. When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and for the reasons discussed by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction for aggravated robbery and the gun specification.

Therefore, the sufficiency of evidence claim alleged in Ground One of the petition is without merit and should be denied.

---

[2] *Brown v. Konteh*, 567 F.3d 191 (6th Cir. 2009), cited by petitioner in his reply brief (Doc. 19 at 4), is factually distinguishable from the instant case. The Sixth Circuit in *Brown* reversed the denial of habeas corpus relief on the defendant's firearm specification under Ohio Rev. Code § 2941.145(A) which requires "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." The *Brown* Court determined the state appellate court's determination was unreasonable as to one of the numerous victims because there was no evidence that a gun was actually used or displayed in the perpetration of the offenses against that particular victim. *Id.* at 214. In contrast, the evidence here showed petitioner "indicated possession" of a firearm by way of his admission in his threatening note to the bank teller.

15

## IV. GROUND TWO OF THE PETITION IS WITHOUT MERIT.

In Ground Two of the petition asserts that petitioner was denied due process when the Ohio Court of Appeals disregarded the testimony of the bank teller that she did not observe petitioner with a weapon during the bank robbery. Contrary to this contention, the Ohio Court of Appeals explicitly acknowledged the teller's testimony, but determined that the teller did not have the opportunity to observe petitioner with a gun because she complied with his threats not to look at him or be shot. In the context of the evidence presented, the state appellate court determined that the absence of any observation of an overt act on the part of petitioner by the teller went to the weight of the evidence and not the sufficiency of the evidence to convict. Thus, the teller's testimony that she did not have the opportunity to see whether or not petitioner was armed fails to confirm the absence of a firearm during the robbery as petitioner contends. The Ohio Court of Appeals' determination in this regard did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Ground Two of the petition lacks merit and should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be DENIED with prejudice.

2. Petitioner's motion for summary judgment be DENIED.

3. A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 10/22/08

Timothy S. Hogan
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

EVANS OB'SAINT,
    Petitioner,

vs.

WARDEN, TOLEDO CORRECTIONAL
INSTITUTION,
    Respondent.

Civil Action No. 1:08-cv-640

Beckwith, J.
Hogan, M.J.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation **within 15 days** after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within 10 days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Evans A Ob'Saint<br>527-561<br>Toledo Corr. Inst.<br>PO Box 80033<br>Toledo, OH 43608 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☑ Certified Mail    ☐ Express Mail<br>☐ Registered    ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)    ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7002 3150 0000 8388 4599 |
| PS Form 3811, August 2001 | Domestic Return Receipt    102595-02-M-1540 |

1:08cv640 Doc. 20