UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Evans Ob'Saint, | : Case No. 1:08-cv-640 |
| Petitioner, | : |
| vs. | : |
| Warden, Toledo Correctional Institution, | : |
| Respondent. | : |

**ORDER**

Petitioner Evans Ob'Saint has filed objections to the Magistrate Judge's Report and Recommendation concerning Ob'Saint's petition for habeas corpus pursuant to 28 U.S.C. §2254. The Magistrate Judge has recommended that this Court deny all claims raised in the petition. (Doc. 20)

**FACTUAL BACKGROUND**

Ob'Saint was indicted by an Ohio grand jury for aggravated robbery, in violation of Ohio Rev. Code 2911.01(A)(1), with two firearm enhancement specifications. He was also charged with one count of robbery under Ohio Rev. Code 2911.02(A)(2). As found by the Ohio Court of Appeals in rejecting Ob'Saint's direct appeal,

> ... [Ob'Saint] entered a PNC bank and handed
> a teller a note that read, "Read silently.
> If you look at me again, I'll shoot. If you
> activate an alarm, my time piece will vibrate
> and I'll shoot you first, trust me. Quickly
> remove any dye packs and give me all the
> money. Hand me back that letter, smile, say

-1-

> thank you and walk to the employee's
> bathroom. Don't turn around. Don't try me
> or you'll be sorry forever.

The teller did not see Ob'Saint make any movements to indicate that he was holding or reaching for a gun, but she believed that he had a gun and complied with his instructions. Ob'Saint left the bank with money and a GPS tracking device that had been planted in a currency pack. The police located and arrested him later that day, as he was taking the cash out of a vehicle. Ob'Saint made a full confession and was cooperative with the investigating authorities, but he denied actually having a gun. He consented to a search of his apartment, where deputies found the clothing he wore during the robbery and the note he had given to the teller. No gun or any evidence of a firearm was ever located.

Ob'Saint waived a jury, and at his trial the state presented two witnesses – the police investigator and the bank teller. Ob'Saint argued before trial and in his motion for acquittal that there was insufficient evidence to support the aggravating element of robbery as well as the firearm specifications. The trial court denied his motion for acquittal and found him guilty on all charges and specifications. At sentencing, the counts and the specifications were merged, resulting in a total sentence of six years on the aggravated robbery, with a three-year consecutive sentence on the firearm specification. Ob'Saint's

appeal and his state court post-conviction petitions were all unsuccessful.

Ob'Saint's petition under 28 U.S.C. §2254 raises two grounds for relief. He contends that his conviction under Ohio's firearm specification statute is based upon insufficient evidence that he possessed an operable firearm during the robbery, thereby violating his due process rights. He also contends he was denied due process because the state courts disregarded the bank teller's testimony that she did not see a weapon nor view any conduct indicative of Ob'Saint's possession of a weapon.

The Magistrate Judge concluded that neither ground for relief is meritorious. Regarding the first claim, the Magistrate Judge cites the Ohio appellate court's exhaustive review of Ohio law concerning the type and amount of evidence necessary to prove aggravated robbery with firearm specifications. Applying the principle that a federal habeas court independently reviews the state court record to analyze a claim of sufficiency of the evidence, the Magistrate Judge concluded that the evidence was sufficient to prove the charges against Ob'Saint beyond a reasonable doubt. (Doc. 20 at p. 15.)

The Magistrate Judge also found that Ob'Saint's second claim lacks merit, because the state court explicitly addressed the bank teller's testimony that she did not see a gun nor observe any conduct suggesting a gun. The Ohio Court of Appeals

concluded that she did not have the opportunity to see if Ob'Saint was armed, and that her lack of observation did not establish a reasonable doubt whether or not Ob'Saint had a gun in his possession when he robbed the bank.

**DISCUSSION**

Under 28 U.S.C. §2254(d), Ob'Saint must establish that the result reached by the state court in affirming his conviction and sentence enhancement was contrary to clearly established federal law, or resulted from the state court's unreasonable determination of the facts and evidence presented at his trial.

A claim of insufficient evidence that rises to the level of a constitutional due process violation requires Ob'Saint to establish that no rational trier of fact could have found him guilty beyond a reasonable doubt of the essential elements of the firearm specification.  See Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  A federal habeas court does not reweigh the evidence adduced at trial, nor judge anew the credibility of witnesses.  The state need not have ruled out all other scenarios except that of guilt beyond a reasonable doubt, in order to satisfy the due process standard.  If there are conflicts in the evidence or conflicting inferences arising from the facts, the court must presume that the trier of fact resolved those conflicts in favor of the state, and defer to that decision.  Id. at 326.

Ohio Rev. Code 2911.01(A)(1), of which Ob'Saint was found guilty, defines aggravated robbery: "(A) No person, in attempting or committing a theft offense ... or in fleeing immediately after the attempt or offense, shall do any of the following:  (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"  The Ohio firearm sentence enhancement specification statute requires the state to prove "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."  Ohio Rev. Code 2941.145(A). "Firearm" is defined as

> ... any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

The same statute provides that the fact-finder may rely upon circumstantial evidence to determine whether a firearm was operable, including any "representations and actions of the individual exercising control over the firearm."  Ohio Rev. Code 2923.11(B)(1) and (2).

In State v. Thompkins, 78 Ohio St.3d 380 (1997), the Ohio Supreme Court rejected a defendant's argument that the state had

failed to prove that the gun he displayed during a robbery was operable as required by the specification statute.  The Supreme Court held that the elements of the statute

> ... can be proven beyond a reasonable doubt by circumstantial evidence.  In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

Id., Syllabus ¶1.  Thompkins robbed a bakery by pointing a gun directly at the store clerk, telling her he was committing a "holdup" and to be "quick, quick."  She put $800 in a bag and gave it to Thompkins, who fled the store.  The gun was never recovered, and the clerk testified that Thompkins never threatened to shoot her.  The Supreme Court found that since Thompkins brandished a gun and "implicitly but not expressly" threatened to shoot the clerk if she did not cooperate, the implicit threat can be sufficient to prove that the firearm was operable.  Id. at 384-385.

As the Magistrate Judge's Report discusses, numerous Ohio appellate decisions have addressed a variety of factual scenarios in analyzing the sufficiency of the evidence supporting a firearm specification conviction.  In State v. Belcher, 2007 Ohio 6317 (8th Dist. App. 2007), the victim felt what she believed to be a gun pressing against her back, testified that she saw a gun

weighing down the front of her attacker's hooded jersey, and that the attacker told her "I have a gun, bitch, let go of the purse." That testimony was sufficient to support both elements of the firearm enhancement specification despite the fact that the victim did not actually see a gun, defendant did not threaten to shoot her, and a gun was never found or produced at trial. Similarly, in State v. Jeffers, 143 Ohio App.3d 91, 757 N.E.2d 417 (1st Dist. App. 2001), the robbery defendant kept his hand in his pocket and told the store clerk that he would "blow [her] head off" if she did not comply with his demand for money. That evidence was sufficient to prove both elements of the firearm specification, despite the fact that the defendant never displayed a gun.

And in State v. Greathouse, 2007 Ohio 2136 (2nd Dist. App. 2007), a robbery and rape victim testified that defendant approached her from behind, poked her in the back and forced her into the car, telling her he had a gun and would shoot her and dump her body. The court affirmed his conviction on a firearm specification even though the victim never saw a gun, as the circumstantial evidence surrounding the crime was sufficient to prove the specification beyond a reasonable doubt. See also State v. Green, 117 Ohio App.3d 644, 691 N.E.2d 316 (1st Dist. App. 1996), where the defendant had his hand in a large envelope while telling a bank teller, "Now this is a stickup, and if you

-7-

press any buttons I'll blow your brains out." He also threatened other tellers not to move while keeping his hand in his pocket, threatening he would "blow [their] brains out." The court held that his threats made with his hand either concealed or "used in a manner consistent with having a concealed gun" resulted in the victims' belief that he was armed, which was sufficient to prove aggravated robbery by use of a deadly weapon under the totality of the circumstances. (This case did not address a firearm enhancement.)

Ob'Saint argues that the facts of his case differentiate him from the defendants in these and similar Ohio cases. He argues that there is no evidence that he acted to create an impression that he had a gun. The teller did not see his hand in his pocket, any bulge in his clothing, or any other suggestion that he actually possessed a gun. He argues that the threats in his note, the only evidence in the record about a firearm, are insufficient to establish both possession and operability of a firearm.

The Ohio Court of Appeals concluded that Ob'Saint's note, stating that he had a gun and making repeated references to shooting the teller, was sufficient circumstantial evidence to support both his conviction and the firearm specification:

> In essence, the trial of this case was about resolving conflicting evidence. In the note that Obsaint gave to the teller, he told her that he had a gun. In his statement to the

> police, he said he did not. As with any such case, it was left to the trier of fact to resolve this conflict.

State v. Obsaint, 2007 Ohio 2661 (1st Dist. App. 2007) at ¶20. The court noted that the factfinder (the trial judge, as Ob'Saint waived a jury) rejected his reasonable argument that he was telling the truth when he said he did not have a gun, because he had been truthful about everything else in his confession to the police. In addition, as the Magistrate Judge noted, Detective Pitchford testified at Ob'Saint's trial that Ob'Saint had ample time to get rid of any gun that he had with him during the robbery, and that in Pitchford's experience, getting rid of a gun used to commit a crime is one of the first things an offender is likely to do. (See Doc. 13, Exhibit 26, Trial Trans. at 39-40.) The trial court resolved the conflicts in the evidence, including Ob'Saint's own statements, against Ob'Saint and in favor of the state. The firearm specification statute includes as an element that the offender "indicate" that he has a firearm. Ob'Saint's note to the bank teller was an unmistakably clear "indication" that he possessed a firearm and he would use it if his demands were not met, which under the cases discussed above is sufficient evidence of possession and the firearm's operability.

Ob'Saint argues that an "indication" of firearm possession, to satisfy the reasonable doubt standard, must be based upon more than his statements. He argues there must be a statement **plus**

some affirmative act or conduct which causes a victim to perceive the actual presence of a firearm, such as keeping his hand in his pocket, or pushing something that feels like a gun against a victim.  The Ohio court of appeals squarely rejected this argument, noting that nothing in prior Ohio cases nor in the specification statute required proof of an "overt act" in addition to a threat made by the defendant.

In his written objections, Ob'Saint cites a number of federal cases concerning convictions under the federal bank robbery statute, 18 U.S.C. §2113(a) and (d), to argue that his written threats to the teller are insufficient.  He suggests that these federal cases establish that only when a threat is coupled with brandishing, use or actual physical possession of a firearm, is the evidence sufficient for a conviction under Ohio's firearm specification statute.  Those cases do not assist Ob'Saint, however, because the federal statute differs from the Ohio specification statute.  For example, U.S. v. Ray, 21 F.3d 1134 (D.C. Cir. 1994) was an appeal from a conviction for aggravated armed bank robbery under 18 U.S.C. §2113(d).  That section applies if the evidence establishes that the robber "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device...".  The court found that Section 2113(d) means what it says, that the prosecution must prove actual **use** of a dangerous weapon.  And in U.S. v. Perry, 991 F.2d

304 (6th Cir. 1993), a robbery defendant opened his suit jacket in front of the teller, as though he was reaching for something. The teller was afraid he was reaching for a gun, but never saw a gun or another weapon. There was evidence at the trial that defendant had a wooden carved gun with him during the robbery, but that it had gotten stuck in his clothes. The Sixth Circuit vacated his conviction under Section 2113(d), because concealed possession of a non-genuine gun is insufficient to establish "use" of a dangerous weapon under that statute. In contrast, the Ohio specification statute does not require actual use of a weapon that jeopardizes anyone's life. It only requires evidence that a defendant "indicated that the offender possessed the firearm."

Ob'Saint also cites U.S. v. McLaughlin, 476 U.S. 16 (1986), but that case simply affirmed the lower courts' conclusions that an unloaded handgun can be a "dangerous weapon" for purposes of Section 2113(d).

Ob'Saint then contends that the state court's conclusion that both possession and operability of a firearm were sufficiently proved by Ob'Saint's note and the teller's testimony, impermissibly "stacks" an inference upon an inference to prove two independent elements of the offense. He cites State v. Macias, 2003 Ohio 1565 (2nd Dist. App. 2003), and State v. Kovacic, 2003 Ohio 5219 (Ohio 11th Dist. App. 2003). Macias

-11-

does not assist Ob'Saint; the victim in that case testified that she thought she saw something that might have been a gun in the defendant's hand, but she never saw a gun and the defendant made no threat to shoot her when he demanded her money. The court affirmed his conviction on a firearm enhancement, finding that the victim's testimony was legally sufficient to sustain the jury's verdict. (The Macias court did conclude that the manifest weight of the evidence required vacating defendant's firearm specification conviction, particularly in light of testimony of several of his accomplices that defendant had a toy gun with him during the robbery, and they could not believe that anyone would think it was a real gun. Even if Ob'Saint had presented such a claim here, a manifest-weight-of-the-evidence claim is a state law issue and not cognizable in this habeas proceeding.)

In Kovacic, a robbery defendant demanded money from a convenience store clerk, told the clerk that he had a gun while his hand was in his pocket, and took the money the clerk handed to him. He was convicted and on appeal argued the state failed to prove the firearm specification. The Court of Appeals vacated his conviction, holding that at best, the state demonstrated that defendant made a statement that he had a "gun." That was insufficient to prove that defendant had a "firearm." The court also stated that to infer possession of a firearm from his statement that he had a gun, "... would require us to pile an

inductively weak inference upon an even weaker inference. Such is an exercise in undue speculation." Id. at ¶20. While the evidence supported his aggravated robbery conviction, it was insufficient to prove the firearm specification. The court also rejected the suggestion that defendant's statement and actions were "implicitly threatening" and that operability of the firearm could therefore be inferred.

The dissent in that case noted that Ohio's specification statute expressly permits reliance on circumstantial evidence to prove possession **and** operability, including any implicit threats made by the defendant. Given all the circumstances (defendant entered the store in the early morning hours, demanded money, and said he had a gun), the cashier understood what defendant implied: "give me the money or I will shoot you."[1]

Kovacic has been criticized by other Ohio courts for applying an unduly stringent evidentiary standard. In State v. Watkins, 2004 Ohio 6908 (8th Dist. App. 2004), defendant approached the victim at a bus stop late at night, walked behind him, and put what the victim said felt like a gun into his side. Defendant said "you know, what it is," and forced the victim against the bus shelter while rifling his pockets. Defendant got

---

[1] The Ohio Supreme Court accepted the state's appeal from this decision, but then sua sponte dismissed the appeal as improvidently granted. See State v. Kovacic, 103 Ohio St.3d 1201 (2004).

into a car that pulled up and left the scene.  The victim never saw a gun, and defendant never explicitly said he had a gun.  The police stopped the car a short time later and found the victim's credit cards, a gun holster, and a loaded gun outside the car's passenger door.  Watkins was convicted of aggravated robbery with a firearm specification, which he challenged on appeal.  The court of appeals reviewed the various cases discussing the state's evidentiary burden, noting some differing interpretations on how much circumstantial evidence is required.  The court acknowledged Kovacic, but found that numerous other Ohio courts routinely apply a less stringent evidentiary standard.  The Watkins court found that State v. Knight, 2004 Ohio 1941 (2nd Dist. App. 2004), was most directly relevant to Watkins' case.  In Knight, the store clerk testified that defendant had both hands in his jacket pockets when he came into the store, demanding that she open the cash register.  The clerk believed that he had a gun and gave him the money because of her belief.  Knight held that

> ... both a weapon's existence and its operability may be inferred from the facts and circumstances.  Suffice it to say, there may be circumstances where the defendant's conduct alone makes clear that he holds a hidden weapon and that he could use it if the victim fails to comply with his instructions.

Watkins at ¶20, quoting from Knight.  The court therefore affirmed Watkins' conviction.

Similarly, in State v. Haskins, 2003 Ohio 70 (6th Dist. App. 2003), the court affirmed a conviction for aggravated robbery and a firearm specification.  Defendant approached a gas station clerk and demanded money; when the clerk thought he was joking, defendant said "Are you going to give me the money or do I have to pull this pistol out of my pocket?"  The clerk never saw a gun and no gun was ever found, but she gave defendant the money from her register drawer.  Although the clerk did not see a gun, defendant's threat to use one was enough under Thompkins for the jury to conclude that defendant had an operable firearm.  See also, State v. Bowman, 2006 Ohio 6146 (10th Dist. App. 2006) at ¶25, noting:  "Moreover, a defendant may be convicted of a firearm specification if, in the course of the crime, the defendant states he or she possesses a gun and will use it, even if no one sees the gun, the gun is never produced at trial, and the gun therefore cannot be tested to determine operability ..." (internal citations omitted).

State v. Kovacic does not follow the majority of Ohio cases addressing the necessary quantum of evidence.  Moreover, the defendant in Kovacic told the clerk he had a gun and demanded money.  In contrast, Ob'Saint's note explicitly threatened to "shoot" the teller if she looked at him, or if she activated an alarm.  He also warned her not to "try me or you'll be sorry forever."  These explicit threats to "shoot" the teller are

-15-

sufficient circumstantial evidence to prove the possession of an operable firearm.

Ob'Saint also relies on State v. Gaines, 46 Ohio St.3d 65 (1989), that described certain types of circumstantial evidence that are sufficient to prove firearm operability, such as "testimony as to gunshots, smell of gun powder, bullets, or bullet holes." Id. at 69. Ob'Saint suggests that only this sort of physical evidence would be sufficient to establish that he had an operable firearm. His reliance on Gaines is misplaced, however, because the Ohio Supreme Court's subsequent decision in State v. Murphy, 49 Ohio St.3d 206 (1990), specifically modified Gaines, and held that testimony of lay witnesses concerning all the circumstances surrounding the crime can be sufficient to meet the reasonable doubt burden of proof.

Finally, Ob'Saint cites Tilley v. McMackin, 989 F.2d 222 (6th Cir. 1993), involving a habeas petitioner's challenge to his conviction under Ohio's firearm specification statute. The Sixth Circuit found that operability of a firearm is an element of that statute which must be proven beyond a reasonable doubt, an established principle recognized in all of the cases discussed above. The Sixth Circuit also specifically noted that the fact of operability may be established by circumstantial evidence, which may include "... evidence that can be viewed as an acknowledgment by the individual exercising control over the

firearm that it was operable, through testimony about how he used the gun, his statements, and his conduct." Id. at 225, citing Ohio Rev. Code 2923.11(B)(2). The victim in that case testified she had seen defendant holding what she believed to be a handgun, with his finger on the trigger. That was sufficient for the jury to reasonably conclude that the gun was operable, because the defendant acted as though it was. Ob'Saint suggests that only if there was testimony from the bank teller about "how he used the gun," along with his "statements and his conduct" could his conviction be upheld. The Court disagrees, as Tilley supports the conclusion that the note to the teller, affirmatively stating that he would shoot her if she sounded an alarm or looked at him again, is sufficient evidence upon which a rational trier of fact could find Ob'Saint possessed an operable firearm.

After careful review of the cases and the record in this case, the Court concludes that the Ohio court's decision on this issue was not contrary to clearly established federal law, and was not the result of an unreasonable determination of the facts in light of the evidence presented.

Ob'Saint's second ground for relief argues that the state court failed to address the significance of the bank teller's testimony at his trial. He contends that the state court and the Magistrate Judge incorrectly found that the teller "did not have the opportunity to see whether or not petitioner was armed...".

(Doc. 22 at p. 7.)  Ob'Saint labels this a false and misleading misrepresentation of the teller's actual testimony.

The bank teller testified that Ob'Saint approached her in the bank, and said he had received a letter in the mail.  He handed her this "letter" which in fact was Ob'Saint's note, telling her to give him all the money and "to not look at him again."  (Doc. 13, Exhibit 26, Trial Trans. at pp. 6-7.)  The note, which was read into the record during the trial, plainly stated: "If you look at me again, I'll shoot."  (Id. at 7.)  The teller gave him the money, and as soon as she saw him walking towards the door, she went to the employee's bathroom as instructed.  The teller freely admitted that she did not see him reach for anything, put his hand in his pocket, and that he never verbally threatened to shoot her or told her that he had a gun.  All of his communication was through the note.  The teller believed she probably read the note two or three times before it "actually kind of sunk in," but that she followed Ob'Saint's instructions.  (Id. at 14)  Those instructions included the warning not to look at Ob'Saint again.

In addressing Ob'Saint's argument that the state was required to prove an overt act on his part, the court of appeals found:

> Obsaint's note specifically instructed the
> bank teller not to look at him.  Since the
> record indicates that she did as the note
> demanded, she did not have the opportunity to

> see if Obsaint was doing anything to confirm
> that he was armed. Under such circumstances,
> the absence of an overt act goes more to the
> weight rather than to the sufficiency of the
> evidence.

State v. Obsaint, 2007 Ohio 2661 at ¶17. This statement, contrary to Ob'Saint's arguments, accurately reflects the trial testimony. The teller specifically testified that she followed Ob'Saint's written instructions. Ob'Saint again relies on U.S. v. Perry, discussed above, involving the federal bank robbery statute. The court found that the evidence against Perry was insufficient because, at best, the bank teller saw him open his coat and was afraid that he might have a gun; the defendant never displayed or "used" a gun as the statute required. In contrast, the Ohio firearm specification statute does not require "use" of a firearm. Perry, and other cases discussing 18 U.S.C. §2113(d), are therefore inapplicable here as well. The Court therefore overrules the second ground for relief.

As required by 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case. Upon such review, the Court finds that Ob'Saint's objections to the Magistrate Judge's Report and Recommendation are not well taken, and his objections are therefore overruled.

It is therefore ordered that the petition for a writ of habeas corpus is **DENIED** with prejudice. A certificate of

appealability shall not issue because jurists of reason would not find it debatable whether this Court is correct in concluding that the petition for habeas relief should be denied. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

This Court **CERTIFIES**, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this Order would not be taken in good faith. Accordingly, Petitioner will not be granted leave to appeal in forma pauperis. See Fed. R. App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

SO ORDERED.

DATED: December 21, 2009    s/Sandra S. Beckwith
Sandra S. Beckwith
Senior United States District Judge